People v Ehinmiakhena

2026 NY Slip Op 02363

April 21, 2026

Court of Appeals

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

The People & c., Respondent,

v

David Ehinmiakhena, Appellant.

Decided on April 21, 2026

No. 29

Kristina Schwarz, for appellant.

Brent Yarnell, for respondent.

NAACP Legal Defense and Education Fund et al., amici curiae.

[*1]

MEMORANDUM:

The order of the Appellate Term should be reversed and the case remitted to Criminal Court of the City of New York for further proceedings in accordance with this memorandum.

Defendant was charged by misdemeanor complaint with aggravated unlicensed operation of a motor vehicle in the second and third degrees (Vehicle and Traffic Law § 511 [2] [a] [iv]; [1] [a]) and unlicensed driving (Vehicle and Traffic Law § 509 [1]) after a police officer stopped defendant's vehicle for an unspecified reason. In the factual portion of the complaint, the officer alleged that defendant was observed operating a motor vehicle on a public highway insofar as the key was in the ignition, the engine was running and defendant was behind the wheel. The complaint further alleged that a computer check of records from the New York State Department of Motor Vehicles (DMV) indicated that defendant's driver's license was suspended for failing to answer a summons and pay a fine.

Defendant, asserting that there was no lawful basis for the vehicle stop, moved to suppress any fruits of the unlawful seizure, including testimony from the officer as to post-stop observations of his incriminating conduct. Defendant acknowledged the holding of our opinion in People v Tolentino (14 NY3d 382 [2010]), that his identity and DMV records were not subject to suppression, but asserted that testimony identifying him or describing his [*2]behavior that was obtained as a result of the illegal seizure was suppressible as fruit of the poisonous tree. Alternatively, defendant requested a hearing.

The People opposed the motion, arguing without elaboration that defendant's vehicle was not illegally stopped. They maintained, however, that, even if it was, the post-seizure observations were not suppressible in the context of this case. The People characterized the observations at issue as limited to defendant handing over his driver's license, which led to the discovery of his identity and DMV records, and contended that, since defendant's identity was not subject to suppression, neither were the officer's observations leading to that fact. They stopped short of conceding that observations related to defendant's operation of the vehicle would be suppressible if the seizure was illegal.

Criminal Court summarily denied defendant's motion, observing that, to the extent defendant sought suppression of his identity and DMV record, such observations are never suppressible as fruit of an unlawful seizure under Tolentino. The court, however, did not opine on defendant's argument seeking suppression of incriminating post-stop observations. Nor did the court address the legality of the vehicle stop or explain what role, if any, the legality of the stop played in its suppression determination.

In light of the above, we remit to Criminal Court so that a suppression hearing can be held. We note that it is unclear whether the court accepted the People's position that the only post-stop observation at issue, the handing over of the driver's license, was identity evidence not subject to suppression. Moreover, contrary to defendant's argument that the People's general denial that the stop was illegal was insufficient to create an issue of fact, the People need not do more "than refuse to concede the truth of facts alleged by [the] defendant for a hearing to be held" (People v Weaver, 49 NY2d 1012, 1013 [1980]). Given that the legality of the stop may be essential to determining the suppressibility of post-stop observations, the hearing should address this issue (see CPL 710.60).

WILSON, Chief Judge (partially dissenting):

I am puzzled. Our court can review decisions of lower courts for errors of law only. I have read the majority memorandum over several times and cannot tell what the claimed error of law is. The majority does identify several things that the suppression court did not do (failed to hold a suppression hearing, failed to opine on the admissibility of post-stop evidence, failed to determine whether the stop was legal, failed to explain what role the legality or illegality of the stop played in the suppression decision [majority mem at 3]), but the majority does not say which of these, if any, are errors of law, much less why.

Under the Criminal Procedure Law and our caselaw, Criminal Court's failure to hold a suppression hearing is an error of law requiring reversal, not remittal. Even if remittal might be proper in a different matter, that should not be the case here, because Mr. Ehinmiakhena was convicted of a minor crime and has fully served his sentence.

Not only is the majority's rationale indiscernible, but the record has no indication of why (or even whether) the police stopped Mr. Ehinmiakhena, and therefore whether that stop (or intervention) was lawful. Although the People barely asserted that the stop was lawful, the record contains no information whatsoever from which that determination could be made. Mr. Ehinmiakhena moved for a suppression hearing, alleging facts sufficient to require the court to grant that request, yet the court summarily denied his motion to suppress the evidence resulting from that stop. In such a circumstance, where the People supply not even factual assertions to justify a stop and a defendant has made sufficient allegations to justify a hearing under CPL 710.60, the court must hold a suppression hearing. Once the legality of the stop is determined, the remaining questions are simple and readily reviewable: if the stop is lawful, the evidence is not suppressed. If the stop is unlawful, it must be suppressed unless its recovery is sufficiently attenuated or meets some other limited exception. Failure to grant a hearing and determine the legality of a stop leaves us in the intolerable position we find ourselves in today: an unreasoned instruction to Criminal Court to conduct an evidentiary hearing about a minor incident that occurred nearly ten years ago. People v Mendoza (82 NY2d 415, 430-431 [1993]) warned against precisely this result. At this late date, the only acceptable result of the trial court's mistake is reversal and dismissal.

I.

We know very little about the police stop of Mr. Ehinmiakhena. In the misdemeanor complaint, the People alleged that around 10:35 AM on June 19, 2016, Officer Kim Li "observed the defendant operating a motor vehicle (the key was in the ignition, the engine was running and the defendant was behind the wheel) on a public highway." Officer Li stopped Mr. Ehinmiakhena. Officer Li then conducted a computer check of DMV records and determined Mr. Ehinmiakhena was driving with a suspended license. Mr. Ehinmiakhena was charged with aggravated unlicensed operation of a motor vehicle in the second and third degrees (Vehicle and Traffic Law ["VTL"] § 511 [2] [a] [iv], [1] [a]) and unlicensed driving (VTL 509), but not with any traffic infraction, violation of the VTL, or other unlawful act.

Mr. Ehinmiakhena moved to suppress any evidence obtained as a result of the stop, which he claimed was unlawful. In addition to arguing that the stop was unlawful, he specifically alleged the following facts:

"[T]he defendant was in a motor vehicle in the vicinity of the intersection of Bowery and Delancey Street in Manhattan on the morning of June 19, 2016. He was not driving in a dangerous, erratic, or otherwise suspicious manner. He was not disobeying any traffic rules. Nor was there anything apparently unlawful about the condition of the automobile. He was then seized by the police without a warrant or probable cause."

In opposition, the People denied that Mr. Ehinmiakhena was illegally stopped but provided no explanation of why he was stopped or what happened, instead contending that "post-seizure observations as they occur in this case are not subject to the exclusionary rule." In their written opposition to Mr. Ehinmiakhena's omnibus motion, the People argued that the "observations at issue after the stop would only be the defendant handing over his driver's license that revealed his identity, which subsequently led to the information that the defendant's license had been suspended" and "since the defendant's identity is not suppressible, then neither is the observation of the police leading to that fact."

II.

Although the majority does not offer an explanation, Criminal Court erred in denying Mr. Ehinmiakhena's motion for a Mapp hearing to evaluate the lawfulness of the stop and in summarily denying his suppression motion FN1. [*3]As to the latter, there is an obvious problem with the People's contention that even if the stop was unlawful, merely obtaining a driver's identity and checking it against a DMV database does not violate the Fourth Amendment. Our federal and State Constitutions permit suspicionless stops of motorists only when conducted "pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers" (Matter of Muhammad F., 94 NY2d 136, 142 [1999]; accord People v Pastrana, 41 NY3d 23, 28 [2023]) for the basic reason that "[w]e cannot sanction stops justified only by the generalized and ever-present possibility that interrogation and inspection may reveal that any given motorist has committed some crime" (City of Indianapolis v Edmond, 531 US 32, 44 [2000]). Absent information that Mr. Ehinmiakhena was stopped lawfully, he cannot be prosecuted, even if all that the police obtained from the stop was his identity, used to check a government database. For that reason, Criminal Court could not summarily deny Mr. Ehinmiakhena's motion to suppress without knowing the circumstances forming the basis for the stop.

Criminal Court also erred in denying Mr. Ehinmiakhena's motion for a Mapp hearing. The CPL provides explicit statutory instructions as to the resolution of motions to suppress evidence. A motion to suppress must be summarily granted if a defendant's motion papers satisfy the formal requirements of CPL 710.60 and the People concede the material factual allegations, or if the People agree not to offer the evidence sought to be suppressed (CPL 710.60 [2]). A motion to suppress may be summarily denied if a defendant fails to allege a proper legal basis for suppression or (with two exceptions, neither relevant here) if the "sworn allegations of fact do not as a matter of law support the ground alleged" (CPL 710.60 [3] [b]). But when a defendant alleges sufficient facts to warrant a hearing and the People do not either concede those facts or state that the evidence subject to the motion will not be offered at trial, the court "must conduct a hearing and make findings of fact essential to the determination thereof" (CPL 710.60 [4]).

Our decisions interpreting CPL 710.60 demonstrate that Mr. Ehinmiakhena alleged sufficient facts to require Criminal Court to hold hearing. In People v Mendoza (82 NY2d 415 [1993]), we articulated a multi-pronged framework for that analysis, holding that the factual sufficiency of a defendant's motion to suppress should be determined with (1) reference to the face of the pleadings, (2) the context of the motion and (3) defendant's access to information (id. at 422). As to the first factor, a defendant's motion to suppress must raise factual assertions rather than recite conclusory legal claims (id. at 426). The basic point is that "the pleading on its face sets forth the facts" and that the defendant "provide objective facts from which the court can make independent factual determinations" (id. at 426-427). As to the second factor, when assessing "[w]hether a defendant has raised factual issues requiring a hearing," courts can only do so "with reference to the People's contentions" (id. at 427). Thus, if the People provide threadbare allegations, courts have wider latitude to allow comparably thin allegations from a defendant (id. at 428-429). As to the third factor, when weighing the precision of the defendant's factual allegations, courts must consider the "information available to [the] defendant" (id. at 429). That factor recognizes that in many circumstances, a defendant will "not have access to or awareness of the facts necessary to support suppression" (id.).

Mendoza involved four unrelated consolidated appeals. We contrasted the allegations in three (Martinez, George J and Coleman)—in which the allegations were conclusory statements that the defendants were not violating the law when arrested—with the allegations in Mendoza, in which the defendant alleged he was arrested by a store detective who was either a peace officer or someone working under the supervision of a licensed police officer. We held that the first three were insufficient to entitle those defendants to a suppression hearing, but that Mr. Mendoza, in contrast, had pleaded sufficient facts to require a hearing. We noted that Mr. Mendoza's case, "although the Appellate Division may have been correct in characterizing as 'speculative' defendant's allegation about the guard's status—indeed, defendant provided no factual support for his claim—a guard's licensing status, unlike facts regarding a defendant's own actions or observations, is not something a defendant could be expected to know and thus allege with particularity" (Mendoza, 82 NY2d at 433-434]).

As set forth above, Mr. Ehinmiakhena's factual assertions are more robust than Mr. Mendoza's. As with Mr. Mendoza, the People offered nothing but a bare assertion of legality of the stop. Mr. Ehinmiakhena, like Mr. [*4]Mendoza, could not be expected to know why the officer pulled him over. Mr. Ehinmiakhena demonstrated an even stronger entitlement to a suppression hearing than did Mr. Mendoza, whose conviction we vacated based on the erroneous summary denial of a motion to dismiss.

Mendoza and its progeny establish two points. First, defendants often labor under an informational asymmetry that inhibits their ability to obtain a Mapp hearing, and courts must be sensitive to the unfairness produced by this asymmetry according to the circumstances of each case. We gave further color to that point in People v Bryant (8 NY3d 530 [2007]). There, reversing the trial court's summary denial, we held that the defendant presented sufficient allegations to create a factual dispute warranting a hearing (id. at 534). The defendant had moved to suppress all evidence proffered against him, claiming he was seized and arrested without a warrant (id.). He specifically challenged a photo array identification procedure whereby "an unknown witness whose source of information—whether the alleged witness actually observed the crime, or only relied on hearsay—was uncertain" (id. at 532). The People did not name the person who made the identification, and in their opposition contended that the defendant simply failed to "dispute the facts set forth in the complaint" and thus was not entitled to a hearing (id. at 533). We held that the People's withholding of the factual predicate for the defendant's arrest inhibited his ability to allege facts to dispute the basis of his arrest (id. at 534). The fundamental takeaway was that "[t]he People could not both refuse to disclose the informant's identity, or at least some facts showing a basis for the informant's knowledge the police relied upon to establish probable cause for the arrest, and insist that defendant's averments in his pleadings were insufficient to obtain a Mapp/Dunaway hearing" (id.). Simply put, the People cannot both withhold information necessary for a defendant to raise a sufficient legal challenge while also seeking to deny such a hearing with factually vacuous assertions of legality.

The second and equally vital point from Mendoza is that judicial prudence and efficiency weigh in favor of holding suppression hearings even in some cases in which the defendant's factual allegations are insufficient. Beyond the three-factor analysis, Mendoza noted that even when the factual allegations in a motion are deficient, CPL 710.60 (3) permits, but does not require, summary denial of a motion to suppress. Indeed, "considerations of judicial economy militate in favor" of holding a suppression hearing because "an appellate court might conclude that summary denial of the Mapp motion was improper, requiring the parties and witnesses to reassemble for a new hearing, often months or years later" (Mendoza, 82 NY2d at 430-431).

Those twin observations explain how Criminal Court erred by summarily denying the suppression motion in this case. To begin, Criminal Court determined that Mr. Ehinmiakhena "[c]ertainly . . . has stated a factual basis for his standing to object to evidence," citing Mendoza (82 NY2d at 424, 432). Criminal Court did not consider the fact that CPL 710.60 would thus require an evidentiary hearing; instead, it simply noted that "the People are not seeking to offer any statement of the defendant or testimony that there was a police-arranged identification procedure." Yet neither CPL 710.60 nor Mendoza provides such a ground for summary denial of a suppression motion.

Criminal Court erred in summarily denying Mr. Ehinmiakhena's suppression motion and, independently, in failing to hold an evidentiary hearing. On the facts here, those errors require reversal and dismissal of the accusatory instrument, not remittal. The law is very clear that police stops of motorists require probable cause (or a carefully devised checkpoint) (People v Hinshaw, 35 NY3d 427, 431-432 [2020]). The People chose not to supply any lawful reason for the stop and should not now be able to have a belated chance to change course.

In addition, even were one to conclude that the consequence of one or both of Criminal Court's errors should be a remittal for a hearing, in this case both the passage of time and the minor nature of the offense involved mean that we should dismiss the indictment, which contained no other charges beyond the unlicensed driving allegations (People v Burwell, 53 NY2d 849, 851 [1981 mem]; cf. People v Allen, 39 NY2d 916, 917 [1976]; see also People v Galindo, 2026 NY Slip Op 00965 [Feb. 19, 2026] [dismissing unlicensed operation charge on basis that defendant already served his sentence and retrial would serve no penological purpose]). Remitting for an officer to recall what happened at a traffic stop 10 years ago for the purpose of sustaining a conviction for unlicensed driving is a fool's errand.

Order reversed and case remitted to Criminal Court of the City of New York, New York County, for further proceedings in accordance with the memorandum herein. Judges Rivera, Garcia, Singas, Cannataro, Troutman and Halligan concur. Chief Judge Wilson dissents in part in an opinion.

Decided April 21, 2026

Footnotes

Footnote 1: To be clear, this is conceptually distinct from the majority's concern, ungrounded in any statute or decisional law, that Criminal Court "opine[d] on" (or did not opine on) Mr. Ehinmiakhena's arguments (majority mem at 3). The error does not hinge on anything about the way the trial court articulated its reasoning or the issues it addressed in its summary denial; the error is in its failure to grant a hearing that was required by law.